THE MAY DEPARTMENT STORES COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
May Dep't Stores Co. v. Commissioner
Docket No. 4021-72.
United States Tax Court
T.C. Memo 1974-253; 1974 Tax Ct. Memo LEXIS 69; 33 T.C.M. (CCH) 1128; T.C.M. (RIA) 74253; September 23, 1974, Filed. *69 Where petitioner received a tract of land at the site of a planned shopping center complex in consideration of a promise to construct and operate a retail facility on that tract, it is Held, that the transfer of the tract of land constituted a contribution to the petitioner's capital. Robert A. Schulman and Lyman G. Friedman, for the petitioner. Ted M. Riseling and John B. Turner, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION
FAY, Judge: Respondent has determined a deficiency in Federal income tax in the amount of $326,889 against The May Department Stores Company for its taxable year ended January 31, 1965. We are asked to decide if the value of a tract of land conveyed to petitioner on January 28, 1965, was properly excluded from petitioner's gross income as a contribution to its *70 capital under section 118. [1]
FINDINGS OF FACT Certain facts have been stipulated by the parties and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Harold T. and Veronica P. Segerstrom, husband and wife; Henry T. and Yvonne deC. Segerstrom, husband and wife; Harold T., Jr., and Jeanette E. Segerstrom, husband and wife; and Nellie R. Segerstrom (the Segerstroms) owned 2,000 contiguous acres of land in Orange County, California. In about 1960 the Segerstroms formulated a plan to develop a a portion of the 2,000 acres as a shopping center to be known as South Coast Plaza. In the initial stage of its development the center was to consist of two large "anchor stores" [2] connected by an enclosed mall with facilities which could accommodate 70 smaller retail establishments. It was critical to the financial success of this venture that popularly known retailers locate *71 in South Coast Plaza. The volume of business which these retailers could generate would have a decisive effect upon the rentals which the Segerstroms would realize on the 70 stores [3] planned for the enclosed mall as well as upon the value of the land still owned by the Segerstroms in the vicinity of the proposed shopping center's site. The May Department Stores Company (petitioner) was a corporation organized and existing under the laws of the State of New York with principal offices in St. Louis, Missouri, at the time the petition was filed herein. A highly successful retailer of nationwide reputation, petitioner was considering the possibility of expanding into the area where South Coast Plaza was to be built. In 1963 representatives of petitioner and of the Segerstroms entered into negotiations relative to petitioner's opening a store in the proposed South Coast Plaza shopping center. The negotiations resulted in an agreement under the terms of which the Segerstroms conveyed 16.4 acres of land *72 at the site of the proposed shopping center to petitioner on January 28, 1965. In consideration of this conveyance petitioner agreed to build a store on the tract which it received. Specifically, it was provided that excavation of the foundation begin within 18 months of the date of the conveyance and that construction be completed with due diligence, but in no event later than 3 years from the acres of land in Orange County, California. In about 1960 commencement of construction. A failure on the part of petitioner to comply with this agreement could result in a forfeiture of the property. Petitioner further obligated itself to operate, or cause to be operated, a retail facility on the premises to be constructed, for a period of 25 years. No additional consideration in the form of cash, goods or services passed from petitioner to the Segerstroms. Petitioner's facility at South Coast Plaza opened on February 21, 1966. The Segerstroms owned no stock interest in petitioner. Petitioner filed a corporate income tax return for its fiscal year ended January 31, 1965, with the district director of internal revenue at St. Louis, Missouri. The fair market value of the land conveyed *73 to petitioner on January 28, 1965, [4] was not included in the gross income reported on that return. By notice of deficiency dated April 18, 1972, respondent increased petitioner's taxable income for the year in question by the amount of the fair market value of the land. ULTIMATE FINDING OF FACT The conveyance of January 28, 1965, constituted a contribution to petitioner's capital. OPINION The resolution of the issue now before us is wholly dependent upon whether the benefits which the Segerstroms expected to derive from the transaction under consideration were "indirect" and "intangible." [5]
*74 Respondent urges that we limit the application of these admittedly imprecise terms to benefits which the contributor can enjoy only as a member of the community at large and hold in consequence that the transfer of January 28, 1965, did not constitute a contribution to petitioner's capital. We think respondent's notion of what constitutes an "indirect" and "intangible" benefit is unduly restrictive, Federated Department Stores, Inc., 51 T.C. 500 (1968), affd. 426 F.2d 417 (C.A. 6, 1970); [6] and we find the benefits sought by the Segerstroms to have been "indirect" and "intangible." In consideration of the conveyance of January 28, 1965, petitioner convenanted to construct a store at South Coast Plaza and to operate a retail facility therein. The Segerstroms *75 were not to have title to the building constructed, nor was it to be placed at their disposal; neither were the Segerstroms to share in the proceeds of the business transacted by petitioner in its South Coast Plaza facility. The Segerstroms entered into this transaction with the expectation that the value of their real estate interests would increase markedly if petitioner succeeded in attracting a great number of customers to its South Coast Plaza facility. We do not think the relationship between the acts petitioner bound itself to perform and the benefits sought by the Segerstroms were sufficiently direct to justify our finding that the conveyance under consideration was compensation for services to be rendered by petitioner rather than as a contribution to its capital. [7] Accordingly, we hold that it was a capital contribution within the meaning of section 118 and as such properly excluded from petitioner's gross income. *76 Decision will be entered for the petitioner. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. "Anchor stores" is a term used by those engaged in land development to refer to the major retail establishments commonly found in shopping centers. ↩
3. The Segerstroms were to retain title to these stores and lease them to retailers for an annual rental equal to the greater of a fixed sum or a fixed percentage of gross sales. ↩
4. The fair market value of the land at the date of conveyance has been stipulated to be $656,000. ↩
5. See S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 18-19 (1954); and H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 17-18 (1954). Respondent has suggested that the risk of forfeiture subject to which petitioner received the land may have prevented the land from becoming a permanent part of petitioner's capital structure at the time of transfer. See United States v. Chicago, B.&Q.R. Co., 412 U.S. 401, 413 (1973). We hold that the forfeiture provision had no such effect. See Brown Shoe Co. v. Commissioner, 339 U.S. 583↩ (1950). 6. See Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders, 3-52 (3d ed., 1971); also Freeman and Speiller, "Tax Consequences of Subsidies to Induce Business Location," 9 Tax L. Rev. 255 (1954); also, note: Pearson, "United States v. Chicago, Burlington & Quincy Railroad: A New Test for Nonshareholder Contributions to Capital," 27 Tax Lawyer, 503, 511 (1974)↩. 7. See Federated Department Stores, Inc., 51 T.C. 500 (1968), affd. 426 F.2d 417 (C.A. 6, 1970), wherein the land developer of a shopping center conveyed land to a retailer to induce the latter to locate a facility in the center. The conveyance, strikingly similar to the one now before us, was held to be a contribution to the retailer's capital. See also Brown Show Co. v. Commissioner, 339 U.S. 583 (1950). See by way of contrast the following cases wherein, upon the authority of Detroit Edison Co. v. Commissioner, 319 U.S. 98 (1943), the courts found that payments for goods or services were being made rather than contributions to capital: Teleservice Co. of Wyo. Val. v. Commissioner, 254 F.2d 105 (C.A. 3, 1958), affirming 27 T.C. 722 (1957), certiorari denied 357 U.S. 919 (1958); Denver & Rio Grande Western Railroad Co., 32 T.C. 43 (1959), affd. 279 F.2d 368 (C.A. 10, 1960); United Grocers Ltd. v. United States, 308 F.2d 634 (C.A. 9, 1962); and John B. White, Inc., 55 T.C. 729 (1971), affd. 458 F.2d 989 (C.A. 3, 1972), certiorari denied 409 U.S. 876↩ (1972).